Eric A. Grover (SBN 136080)
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California  94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
eagrover@kellergrover.com

Jeremiah Frei-Pearson (*Pro Hac Vice* forthcoming)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
445 Hamilton Ave, Suite 605
White Plains, New York 10601
Telephone:  (914) 298-3281
Fax:  (914) 908-6709
jfrei-pearson@fbfglaw.com

*Counsel for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS DATTOMA, on Behalf of Himself and all Others Similarly Situated,<br><br>                              Plaintiff,<br><br>       v.<br><br>SEAGATE TECHNOLOGY, LLC<br><br>                              Defendant. | Case No. 3:16-cv-2136<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Nicholas Dattoma ("Plaintiff"), on behalf of himself and all other persons similarly situated, files this Class Action Complaint ("Complaint") against Defendant Seagate Technology, LLC ("Seagate" or "Defendant"), and respectfully alleges the following:

## NATURE OF THE ACTION

1.      This class action seeks to redress Seagate's unlawful and negligent maintenance and disclosure of confidential personal information it obtained from thousands of employees, in violation of California Business & Professional Code §§ 17200, *et. seq.* and common law.

2.      Seagate is a data storage company that recklessly and negligently disregarded its obligations to safeguard its employees' and affiliates' employees ("Employees") personally identifying information ("PII"). On approximately March 1, 2016, a Seagate employee responded to an Internet "phishing" scam email from unknown cybercriminals seeking 2015 Form W-2 data for Employees which was an Internet "phishing" scam from unknown cybercriminals.  According to public statements made by Seagate, in response to the scam email, a Seagate employee provided cybercriminal with the 2015 Form W-2's of hundreds to thousands of current and former Employees.   These W-2's contained highly sensitive PII, including names, addresses, 2015 calendar year compensation and Social Security numbers  Seagate's negligent and reckless release of this highly sensitive PII is referred to herein as the "Data Breach."

3.      Computer security experts, such as Brian Krebs, have written extensively about the fact that Form W-2's are prized by criminals because they contain all of the information necessary to file fraudulent tax returns seeking fraudulent refunds.   On information and belief, shortly after the Data Breach, it became evident that the cybercriminals (or a third party who obtained the PII from the cybercriminals) exploited Seagate's negligent and reckless release of the Form W-2's by filing fraudulent federal and state tax returns in the names of several Employees, including Plaintiff.  In fact, it is now

clear that Seagate's wrongful disclosure may have included more than just employee Form W-2 data. As a result of the Data Breach, fraudulent joint tax returns were also filed, which may have required not only the Employee's Social Security number, but also the Employee's spouse's Social Security number. This suggests that Seagate disclosed additional data, such as retirement fund or insurance beneficiary information that contained the PII of non-employee third parties.

4.     The nature of PII makes this wrongful disclosure particularly harmful. Cybercriminals can engage in a variety of fraudulent activity, and therefore, Seagate's Employees remain at a heightened risk of identity theft. On information and belief, many Employees have already suffered out-of-pocket costs attempting to rectify fraudulent tax returns and engaging services to monitor and protect their identity and credit. Employees will continue to suffer out-of-pocket costs in the future to protect and, if necessary, repair the harm done as a result of this breach. By this action, Plaintiff seeks to hold Seagate responsible for the harm caused by its negligence.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) (CAFA) because (a) there are 100 or more Class Members, (b) at least one Class Member is a citizen of a state that is diverse from Seagate's citizenship, and (c) the matter in controversy exceeds $5 million, exclusive of interest and costs.

6.     This Court has personal jurisdiction over Seagate because Seagate maintains its principal place of business in this District, and conducts substantial business in the District.

7.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because Seagate resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PARTIES

8.      Plaintiff Nicholas Dattoma is a resident of Oceano, California and a former employee of Seagate Technology, LLC. Plaintiff provided confidential information to Defendant including his name, date of birth and social security number in connection with his employment.  Plaintiff reasonably expected that Defendant would maintain the privacy of his confidential PII.  He received a letter from Defendant in mid-March 2016 regarding the Data Breach, and was also alerted of the Data Breach by former colleagues.  On or about April 13, 2016, Plaintiff's electronically filed 2015 federal and state tax returns were rejected because tax return documentation had already been filed using his PII.   Plaintiff has since taken the time and effort to re-file paper copies of his state and local taxes along with accompanying affidavits.    Additionally, Plaintiff has purchased identity theft protection and monitoring.

9.      Defendant Seagate Technology, LLC is a limited liability corporation organized under the laws of the state of Delaware with its principal place of business in Cupertino, California.

## FACTS

### I.      The Seagate Data Breach

10.    Personally identifiable information or "PII" is information that can be used to distinguish or trace an individual's identity, such as their name, Social Security number, and biometric records, alone, or when combined with other personal or identifying information that is linked or linkable to an individual, such as their birthdate, birthplace, and mother's maiden name.[1]

11.    Like most employers, Seagate maintains Form W-2 data and provides employees with a yearly Form W-2 which are required for Employee tax filing purposes.

---

[1] *See, e.g.*, OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16; NAT'L INST. OF STANDARDS & TECHNOLOGY, GUIDE TO PROTECTING THE CONFIDENTIALITY OF PERSONALLY IDENTIFIABLE INFORMATION (PII), NIST SPECIAL PUBLICATION 800-122 (April 2010), at 2-1.

Form W-2 data contains sensitive PII including employee names, addresses, calendar year compensation and Social Security numbers.

12.     Seagate, however, did not properly safeguard and protect its Employees PII, thereby resulting in the unlawful disclosure of Employee 2015 Form W-2 Data to cybercriminals.  According to Seagate, on or about March 1, 2016, it discovered that it was the victim of a "phishing" email scam (the "Data Breach").  Through its reckless and negligent dissemination of Employee 2015 Form W-2's, PII for hundreds to thousands of its Employees was disclosed as part of the Data Breach.  The Form W-2 Data disclosed Employee names, addresses, 2015 compensation and Social Security numbers.

13.     Upon information and belief, following the Data Breach, federal and state tax returns were filed in the names of several Employees.

14.     There are also instances in which joint tax returns were filed on behalf of Employees and their spouse, which required both parties' PII.  This fact, suggests that more than just Employee Form W-2 data was disclosed in the Data Breach.

15.     As a result of the wrongful disclosure of his PII, Plaintiff and the Employees have suffered economic loss and a greatly increased risk of further loss.

16.     The harm that cybercriminals can do with Employees' and third party victims' PII is unlimited.  Such data can be used to commit a broad range of fraud in the Employees' names, including, but not limited to:

a.   Filing fraudulent state and federal tax returns;

b.   Obtaining a loan;

c.   Renting Homes;

d.   Applying for credit cards;

e.   Obtaining medical care;

f.   Obtaining state and federal government benefits;

g.   Applying for public documents such as a driver's license; and

h.    Other fraudulent or illegal activity resulting in criminal charges.

17.    In fact, a person whose PII has been obtained and compromised may not see the full extent of identity theft or identity fraud for years:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[2]

18.    Accordingly, Plaintiff and the Putative Class Members will bear a heightened risk of all manners of identity theft for years to come.

19.    Seagate confirmed that the cybercriminals obtained the Employees' PII through a "phishing" scam.  The cybercriminals sent emails to Seagate human resources and payroll employees asking for copies of all its 2015 Form W-2 Data.

20.    Due to Seagate's lack of training, procedures and controls in place to prevent such harm, at least one Seagate employee complied with the cybercriminals' request and forwarded the requested data.

21.    Following discovery of the Data Breach, current employees received an email from Seagate on or about March 4, 2016, informing them that their personal information had been disclosed.  Former employees did not receive notification from Seagate until on or about March 15, 2016.   Plaintiff learned of the Data Breach through an alternative source.

22.    To date, Seagate has not commented on the breach of any third party data.

**II.    Seagate Was On Notice Of A Breach Of This Nature**

23.    Seagate was on notice that a breach of this nature could occur.

---

[2] *See* G.A.O., PERSONAL INFORMATION:  DATA BREACHES ARE FREQUENT, BUT EVIDENCE OF RESULTING IDENTITY THEFT IS LIMITED; HOWEVER, THE FULL EXTENT IS UNKNOWN (June 2007), http:///www.gao.gov/new.items/d07737.pdf.

24.     Minimally competent security and procedures would have prevented the unlawful disclosure of PII.

25.     Data security professionals regularly warn of the precautions that should be taken to protect from potential data breaches.

26.     For example, prior to the attack, Internet security researcher Brian Krebs warned of this precise scam on his Internet website.  Krebs warned that as tax season approached Internet scammers were trying to scam various companies by sending false emails, purportedly from the company's chief executive officer, to individuals in the human resources and accounting departments and asking for copies of Form W-2 data.[3]

27.     Additionally, Seagate has admitted fault.  Seagate's Chief Financial Officer wrote in a March 4, 2016 email to employees: "This mistake was caused by human error and lack of vigilance, and could have been prevented."[4]

28.     Seagate's negligence is exacerbated by the fact that the company is aware of the necessity of security and encryption features in its own products.  For example, the Defendant's website provides the following description of features for its hard drives:

> Secure your data with Seagate's portfolio of Self-Encrypting Drives (SED) for enterprise and PCs with options like Seagate Instant Secure Erase (ISE) for painless drive retirement and the world's only FIPS 140-2 validated hard drive solution. Choose the level of 'data-at-rest' security that's right for you Seagate Secure™ Technology.[5]

---

[3] *Seagate Phis Exposes All Employee W-2's*, KrebsOnSecurity, March 16, 2016 available at http://krebsonsecurity.com/2016/03/seagate-phish-exposes-all-employee-w-2s/ (last checked April 19, 2016).

[4] Skidmore, Sarah, *Snapchat, Seagate Among Companies Duped In Tax Fraud Scam*, March 9, 2016, http://bigstory.ap.org/article/18c257cbc0604af9a24aa3ab92aab79c/snapchat-seagate-among-companies-duped-tax-fraud-scam (last checked April 18, 2016).

[5] *Seagate: Hard Drive Security & Disk Encryption*, available at http://www.seagate.com/solutions/security/ (last checked April 18, 2016).

### III.   The Data Breach Caused Economic Harm

29.   Identity theft occurs when an individuals' PII is used without his or her permission to commit fraud or other crimes.[6]

30.   According to the Federal Trade Commission ("FTC"), "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[7]

31.   Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[8]

32.   As a direct and proximate result of Seagate's reckless and negligent actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, cybercriminals now have Plaintiff's and Class Members' PII.

33.   According to the FTC, "Identity theft is serious.  While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record.  Some consumers victimized by identity theft may lose out on job opportunities, or denied loans for education, housing or cars because of negative information on their credit reports.  In rare cases, they may even be arrested for crimes they did not commit."

---

[6] *See* FEDERAL TRADE COMMISSION, FIGHTING BACK AGAINST IDENTITY THEFT (Oct. 2011), www.ftc.gov/bcp/edu/microsites/ idtheft/consumers/ about-identity-theft.html.

[7] *See* FED. TRADE COMM'N, PROTECTING CONSUMER PRIVACY IN AN ERA OF RAPID CHANGE (March 2012), http://www.ftc.gov/os/2012/03/120326privacyreport.pdf.

[8] FED. TRADE COMM'N, PROTECTING CONSUMER PRIVACY IN AN ERA OF RAPID CHANGE: A PROPOSED FRAMEWORK FOR BUSINESSES AND POLICYMAKERS, PRELIMINARY FTC STAFF REPORT 35-38 (Dec. 2010), http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; COMMENT OF CENTER FOR DEMOCRACY & TECHNOLOGY, No. 00469, at 3; COMMENT OF STATZ, INC., No. 00377, at 11-12.

34.     Additionally, identity theft affects an individual's finances, credit history and reputation and can take time, money and patience to resolve.[9]

35.     Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[10]

36.     PII also is a valuable commodity to identity thieves.   In fact, PII is so valuable that once the information has been compromised, criminals often trade it on the "cyber black-market" for years.[11]   Cybercriminals can post stolen PII on the internet, thereby making such information publically available.

37.     At a FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of an individual's personal information:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy.  Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.

Federal Trade Commission Public Workshop, *The Information Marketplace: Merging and Exchanging Consumer Data*, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm.

---

[9] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, at 3 (2012), available at http://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf.

[10] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id.*

[11] *See, e.g.,* John T. Soma, *et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-*4 (2009).

38.     The value of Plaintiff's and Class Members' PII on the cyber-black market is substantial.[12]

39.     As a result of the Data Breach, numerous Employees have already suffered damages.  In addition, the disclosure of one's Social Security number puts one at great risk of future fraudulent conduct.

40.     Social Security numbers ("SSN") are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.  Specifically, the Social Security Administration has warned that identity thieves can use an individual's SSN and good credit score to apply for additional credit lines.  This form of fraud may go undetected for months, or even years.[13]

41.     Stolen SSNs also make it possible for criminals to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. All of these activities are hard to detect.

42.     As is the case here, fraudulent tax returns have been filed on behalf of Seagate employees.  Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.  The incidence of fraudulent tax filings has increased dramatically over the past years.  The IRS paid an estimated $5.2 billion in tax refunds obtained from identity theft in 2013, while it prevented an additional $24.2 billion in fraudulent transfers the same year.[14]

---

[12] *See, e.g. The Cyber Black Market: What's Your Bank Login Worth?* (March 2011), http://www.ribbit.net/frogtalk/id/50/the-cyber-black-market-whats-your-bank-login-worth; OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, HOW MUCH DO YOU COST ON THE BLACK MARKET?, http://www.ncix.gov/issues/cyber/identity_theft.php.

[13]  *See* Social Security Administration, Identity Theft and Your Social Security Number, http://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Sept. 21, 2015).

[14]  FBI Probes Rash of Fraudulent State Tax Returns Filed Through Turbo Tax, LA TIMES, Shan Li, Feb. 11, 2015, *available at* http://www.latimes.com/business/la-fi-turbotax-fbi-20150212-story.html (last visited Sept. 21, 2015).

43.     Notably, an individual cannot obtain a new SSN without significant paperwork and evidence of actual misuse; an individual must show evidence of actual, ongoing fraud activity to obtain a new SSN.  Even then, a new SSN may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new [SSN]."[15]

44.     As a result of Seagate's reckless and negligent actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, they have incurred (and will continue to incur) economic damages, and other actual injury and harm, in the form of (i) actual identity theft or identity fraud, (ii) unauthorized disclosure of their PII, (iii) invasion of privacy, (iv) breach of the confidentiality of their PII, (v) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud[16] pressed upon them by the Data Breach, (vii) the value of their time spent mitigating the impact of the Data Breach and mitigating increased risk of identity theft and/or identity fraud, and (vii) the impending, imminent, and ongoing increased risk of future identity theft, identity fraud, economic damages, and other actual injury and harm.

## IV.     Seagate Has Not Provided An Adequate Response To The Breach

45.     Although Seagate has acknowledged that the Data Breach has occurred, Seagate has not offered Plaintiff and Class Members any compensation from the past, present, and future identity theft, identity fraud, economic damages, and other injury and harm resulting from the Data Breach.

---

[15] Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR, Brian Naylor, Feb. 9, 2015, *available at* http://www.npr.org/2015/02/09/384875839/data- stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Sept. 21, 2015).

[16] According to the United States Government Accounting Office, the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities, such as when PII is used to commit fraud or other crimes (credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services)).

46.     To date, Seagate has offered Employees merely two years of identity theft protection through Experian ProtectMYID service.  This offering in inadequate to protect Plaintiff and the Class Member against the fraud and identity theft that can occur as a result of this Data Breach.

47.     For example, ProtectMyID only monitors Employees' credit reports – but fraudulent activity, such as the filing of a false tax return, may not appear at all on a credit report.  ProtectMyID does not provide real time monitoring of Employees' credit cards and bank account statements.   Employees must pay extra for these additional services.  Although ProtectMyID offers up to $1 million of identity theft insurance, the available coverage is often duplicative of (or inferior to) basic protections provided by banks and credit card companies.

48.     Further, ProtectMyID does not have superior ratings in the credit monitoring industry.  NextAdvisor ranks ProtectMyID at the bottom of comparable services, noting that it "lacks in protection; only includes Experian credit report monitoring; 7-day trial for $1 with enrollment; credit score and other credit reports cost extra."[17]   Additionally, BestIDtheftCompanys.com ranks ProtectMyID at No. 29 with a score of just 4.4 out of 10 (and a "User Score" of just 1.3).[18]

49.     Further, Seagate has not provided any help with the costs and burdens associated with the fraudulent tax returns that were filed as a result of the breach.

---

[17] *NextAdvisor- Identity Theft Protection Reviews & Prices* available at http://www.nextadvisor.com/identity_theft_protection_services/protect_my_id_review.php (last checked April 19. 2016).

[18] *Experian ProtectMyID*, available at https://bestidtheftcompanys.com/company/experian-protectmyid/ (last checked April 19, 2016).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLASS ACTION ALLEGATIONS

50.     Pursuant to FED. R. CIV. P. 23, Plaintiff brings this action against Seagate as a national class action on behalf of themselves and all members of the following class of similarly situated persons (the "Class"):

> *"All individuals whose PII was compromised as a result of the Data Breach."*

51.     Upon information and belief, the scope of this class definition, including its temporal scope and any exclusions, may be further refined after discovery of Defendant's and/or third party records.

52.     The members of the Class are so numerous that their joinder is impracticable.   According to Seagate, there are thousands of Class Members.   Their identities, physical addresses, and email addresses can be easily derived from Seagate's internal records.

53.     The rights of Plaintiff, and each Class Member, were violated in precisely the same manner by Seagate's reckless and negligent actions, inaction, and omissions that caused the Data Breach and the unauthorized release and disclosure of their PII.

54.     There are questions of law and fact common to the Class, as a whole.  The common questions of law and fact predominate over any questions affecting only individual Members of the Class, and include, without limitation:

    a.  Whether Seagate had a duty to protect Plaintiff's and the Class Members PII;

    b.  Whether Seagate breached it duty to protect Plaintiff's and the Class Members PII;

    c.  Whether Seagate properly designed, adopted, implemented, controlled, managed and monitored data security processes, control, policies,

procedures and/or protocols to protect Plaintiff and the Class Members'
PII in the Data Breach;

    d.   Whether Seagate failed to timely inform Plaintiff and the Class members
of the Data Breach;

    e.   Whether Defendant's conduct was negligent; and

    f.   Whether Plaintiff and Class Members are entitled to damages.

55.   Plaintiff's claims are typical of the claims of the Class Members because Plaintiff, like all Class Members, is a victim of Seagate's wrongful actions, inaction, and omissions that caused the Data Breach, caused the unauthorized release and disclosure of their PII, and caused them to suffer economic damages and other injury and harm.

56.   Plaintiff and his counsel will fairly and adequately represent the interests of the Class Members.  Plaintiff has no interests antagonistic to, or in conflict with, other Class Members' interests.  Plaintiff's counsel is highly experienced in the prosecution of complex commercial litigation, consumer class actions, and data breach cases.

57.   A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy.  The substantive claims of the representative Plaintiff and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same law.  There is no plain, speedy or adequate remedy other than by maintenance of this class action.

58.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because class members number in the thousands and individual joinder is impracticable.  The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually.  Trial of Plaintiff and the Class Members' claims is manageable.  Unless the Class is certified, Defendant will be remain free to continue to engage in the wrongful conduct alleged herein without consequence.

---

59.     Certification of the Class, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

60.     Certification of the Class, also is appropriate under FED. R. CIV. P. 23(b)(2) because Seagate has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

61.     Certification of the Class, also is appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Seagate.

62.     Seagate's wrongful actions, inaction, and omissions are generally applicable to the Class as a whole and, therefore, Plaintiff also seek equitable remedies for the Class.

63.     Seagate's systemic policies and practices also make injunctive relief for the Class appropriate.

64.     Absent a class action, Seagate will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff and Class Members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Negligence)

65.     Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

66.     Plaintiff and Class Members were required to provide Seagate with certain PII in connection with their employment so that, among other things, Seagate could annually generate a Form W-2.

67.     Seagate had a duty to Plaintiff and Class Members to safeguard and protect their PII.

68.     Defendant assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

69.     Defendant had full knowledge about the sensitivity of Plaintiff and Class Members' PII, as well as the type of harm to could occur if such PII was wrongfully disclosed.

70.     Defendant had a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with employee PII data.

71.     Defendant breached its duty of care by failing to secure and safeguard the PII of Plaintiff and Class Members.  Defendant negligently maintained systems that it knew were vulnerable to a security breach, despite being made aware of these vulnerabilities any number of ways.

72.     Further, Defendant, by and through its above negligent actions and/or inaction, further breached its duties to Plaintiff and Class Members by failing to design, adopt, implement, control, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff's and Class Members' PII within its possession, custody and control.

73.     Plaintiff and the other Class Members have suffered harm as a result of Defendant's negligence.  These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, identity theft, credit and bank fraud, Social Security fraud, tax fraud, and myriad other types of fraud and theft.  Plaintiff and other members of the proposed Class suffered and continue to suffer further harm by virtue of Defendant's failure to give timely and complete notice to them concerning the Breach and the risks they face.

74.     It was reasonably foreseeable -- in that Defendant knew or should have known -- that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII would result in its release and disclosure to unauthorized third parties who, in turn wrongfully used such PII, or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

75.     But for Defendant's negligent and wrongful breach of its responsibilities and duties owed to Plaintiff and Class Members, their PII would not have been compromised.

76.     As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, they have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm -- for which they are entitled to compensation. Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence/negligent misrepresentation.

77.     Plaintiff and Class Members are entitled to injunctive relief as well as actual and punitive damages.

## SECOND CAUSE OF ACTION

### (Violation of Unfair Competition Law California Business and Professional Code Section 17200, *et seq.*)

78.      Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

79.     The California Unfair Competition Law, CAL. BUS. & PROF. CODE §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

80.     By reason of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of

Plaintiff's and Class Members' PII, Seagate engaged in unlawful, unfair and fraudulent practices within the meaning of the UCL.

81.    Seagate's practices were unlawful and in violation of Civil Code § 1798.81.5(b) because Seagate failed to take reasonable measures in protecting Plaintiff's and the class members' PII.

82.    Seagate's practices were also unlawful and in violation of Civil Code § 1798.82 because Seagate unreasonably delayed informing Plaintiff and the Class Members about the breach of security after Seagate knew the breach occurred.

83.    Plaintiff and the Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Seagate's above-described wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and disclosure of their PII.

84.    In the course of conducting business, Defendant committed "unlawful" business practices by, *inter alia*, failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and industry standards for safeguarding and protecting Plaintiff's and Class Members' PII within its possession, custody and control, thereby violating the Security Requirements for Consumer Records Act, CIVIL CODE §§ 1798.29 and 1798.80, *et seq.*

85.    Additionally, Seagate also violated the UCL by failing to timely and completely notify Plaintiff and Class Members about the Data Breach and their wrongfully released and disclosed PII.  If Plaintiff and Class Members had been properly notified, they could have taken appropriate precautions to safeguard and protect their PII.

86.    Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII also constitute "unfair" business acts and practices within the meaning of CAL. BUS. & PROF. CODE § 17200 *et seq.*, in that Defendant's conduct was substantially

injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous; the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

87.     Defendant's above-described wrongful actions, inaction, and omissions caused (and continue to cause) substantial injury to Plaintiff and the Class Members by wrongfully released and disclosed their PII. Unless restrained and enjoined, Seagate may continue to engage in the above-described wrongful conduct leading to further unauthorized disclosures of its employees' PII.

88.     As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and the Class Members' PII, they have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm -- for which they are entitled to restitution.  The economic damages, injury, and harm suffered by Plaintiff and the Class Members sufficiently outweigh any possible justifications or motives for Seagate's failure to safeguard and protect their PII.

89.     Plaintiff takes upon himself enforcement of the laws violated by Defendant in connection with the reckless and negligent disclosure of PII.  There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees and costs from the recovery in this action. Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure § 1021.5.

### THIRD CAUSE OF ACTION

### (Breach of Implied Contract)

90.     Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

91.     Seagate Employees provided their PII in connection with their employment with Seagate in order to verify their identity, receive compensation and in order for Seagate to have complete employee records for tax purposes, amongst other things.

92.     Plaintiff and the Class provided various forms of PII to Defendant as a condition precedent to their employment with Defendant, or in connection with employer sponsored benefits.

93.     Understanding the sensitive nature of PII, Defendant implicitly promised Plaintiff and the Class Members that it would take adequate measures to protect their PII.

94.     Indeed, a material term of this contract is a covenant by Seagate that it will take reasonable efforts to safeguard Employees' PII.

95.     Seagate's Employees, including Plaintiff and the Class Members, relied upon this covenant and would not have disclosed their PII without assurances that it would be properly safeguarded.  Moreover, the covenant to adequately safeguard Plaintiff and Class Members PII is an implied term, to the extent it is not an express term.

96.     Plaintiff and the Class Members fulfilled their obligations under the contract by providing their PII to Defendant.

97.     Defendant however, dialed to safeguard and protect Plaintiff's and the Class Members PII.  Defendant's breach of its obligations under the contract between the parties directly caused Plaintiff and Class Members to suffer injuries.

98.     Plaintiff, on behalf of himself and the Class Members, respectfully request this Court award all relevant damages for Seagate's breach of contract.

## RELIEF REQUESTED

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

99.     For an Order certifying the proposed Class pursuant to FED. R. CIV. P. 23(b)(2) and/or (3), requiring notice thereto to be paid by Defendant and appointing Plaintiff and their counsel to represent the Class;

100.　　For appropriate injunctive relief and/or declaratory relief, including an order requiring Defendant to immediately secure and fully encrypt all confidential information, to store any computer passwords in a location separate from the computers, to properly secure computers containing confidential information, to cease negligently storing, handling, and securing its employees' confidential information, and to provide identity theft monitoring for an additional five years;

101.　　Adjudging and decreeing that Defendant has engaged in the conduct alleged herein;

102.　　For compensatory and general damages according to proof on certain causes of action;

103.　　For reimbursement, restitution and disgorgement on certain causes of action;

104.　　For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

105.　　For costs of the proceedings herein;

106.　　For reasonable attorneys' fees as allowed by statute, including California Code of Civil Procedure § 1021.5; and

107.　　For any and all such other and further relief that this Court may deem just and proper, including but not limited to punitive or exemplary damages.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all claims and causes of action in this lawsuit to which he is so entitled.

///

///

///

///

1      Dated:  April 21, 2016            Respectfully submitted,

2

3                       By:   */s/ Eric A. Grover*

4                         Eric A. Grover
                        **KELLER GROVER LLP**

5                         1965 Market Street
                        San Francisco, CA  94103

6                         Telephone: (415) 543-1305
                        Facsimile: (415) 543-7861

7                         eagrover@kellergrover.com

8                         Jeremiah Frei-Pearson (*Pro Hac Vice*
                        forthcoming)

9                         **FINKELSTEIN, BLANKINSHIP,**

10                        **FREI-PEARSON & GARBER, LLP.**
                        445 Hamilton Ave, Suite 605

11                         White Plains, New York 10601
                        Telephone:  (914) 298-3281

12                         Fax:  (914) 908-6709
                        jfrei-pearson@fbfglaw.com

13

14

15                         *Counsel for Plaintiff and the Class*

16

17

18

19

20

21

22

23

24

25

26

27

28